In re Karen H. JOHNSON, Debtor.

Kevin R. McCarthy, Trustee, Plaintiff,

v.

Imported Cars of Maryland, Inc., d/b/a College Park Honda, Defendant.

Bankruptcy No. 97–02490.
Adversary No. 98–10019.

United States Bankruptcy Court,
District of Columbia.

Feb. 19, 1999.

**467**

Kevin R. McCarthy, Washington, D.C., Chapter 7 Trustee.

Erik H. Nyce, Lanham, MD, for defendant.

### DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This decision addresses the plaintiff's motion for summary judgment.

### I

The complaint makes out the following claims against the defendant, Imported Cars of Maryland, Inc., which does business as College Park Honda ("College Park").

Count I seeks turnover of a 1998 Honda pursuant to 11 U.S.C. § 542(a).[1] The plaintiff, the chapter 7 trustee, contends that College Park merely has an unperfected security interest in the car and that his rights in the car as a hypothetical judgment lien creditor are superior to College Park's rights.

On December 13, 1997, the debtor, Karen H. Johnson, purchased a new 1998 Honda car from College Park and received delivery of the car. Three documents were executed:

1. Retail Installment Contract;
2. Spot Delivery/Financing; and
3. Buyer's Order.

The debtor failed to obtain third-party financing for the purchase of the car. On December 24, 1997, the debtor filed her voluntary chapter 7 petition, thus commencing her bankruptcy case.

On January 2, 1998, the debtor notified College Park that she had filed a bankruptcy

---

1.  11 U.S.C. § 542(a) provides:

    (a) Except as provided in subsection (c) or (d) of this section, an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

468

petition. Also on that date, College Park and the debtor executed two documents:

1. Simple Interest Motor Vehicle Contract and Security Agreement; and

2. Buyer's Order.

On January 28, 1998, the debtor again informed College Park that she had filed a bankruptcy petition. On February 5, 1998, College Park repossessed the 1998 Honda car.

Count II asserts that College Park willfully violated the automatic stay when it repossessed the car and when it rejected the plaintiff's subsequent requests to have the car returned to the estate.

The plaintiff's complaint seeks a judgment for $14,110.00, plus interest, $6,000.00 in attorney's fees, $150.00 in costs incurred in bringing and prosecuting the adversary proceeding, and punitive damages. In his reply to College Park's response to the motion for summary judgment, the plaintiff asks for an additional $2,000.00 in compensatory damages.

## II

The court will grant summary judgment as to Count I. The pertinent facts are not in dispute; the issues are only ones of law.

College Park's protestation that it retained title—and hence ownership—misses the mark. As discussed below, not only are all of the documents silent as to matters of title, but under Maryland law [2] any attempted reservation of title was ineffective.

The documents do not refer to title; instead, they explicitly mention the creation of a security interest. The December 13, 1997 Retail Installment Contract provides: "You are giving a Security Interest in the Vehicle being purchased." Similarly, the December

2. The December 13, 1997 Retail Installment Contract provides that it "is made under, and shall be governed by, Subtitle 10 of Title 12 of the Maryland Commercial Law Article." None of the subsequent documents alter this.

3. MD.CODE ANN., Commercial § 2–401(1) provides:

Title to goods cannot pass under a contract for sale prior to their identification to the contract (§ 2–501), and unless otherwise explicitly agreed the buyer acquires by their identifica-

13, 1997 Spot Delivery/Financing document reads: "Dealer retains a security interest in the vehicle...." So the agreements themselves contemplate a transfer of ownership coupled with the creation of a security interest.

Even if College Park had retained or reserved title, it would still only have a security interest. The passage of title cannot occur before goods are identified to the contract, nor can the passage of title be delayed until after shipment or delivery of the goods to the buyer. After shipment or delivery, any retention of title by the seller results only in the reservation of a security interest. In between these extremes, the parties may freely specify the time at which title passes. MD.CODE ANN., Commercial § 2–401(1) [3]; see In re Alcom America Corp., 154 B.R. 97, 110 (Bankr.D.D.C.1993), as supplemented by In re Alcom America Corp., 156 B.R. 873, 874 (Bankr.D.D.C.1993) (interpreting UCC language), aff'd sub nom. ALCOM America Corp. v. Arab Banking Corp., 48 F.3d 539 (D.C.Cir.1995); Connecticut Bank & Trust Co. v. Schindelman (In re Bosson), 432 F.Supp. 1013, 1020 n. 24 (D.Conn.1977) (same).

Further, MD.CODE ANN., Commercial § 2–401(2) is the general rule governing the passage of title. See Alcom America Corp., 154 B.R. at 110. This subsection reads:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; ....

tion a special property as limited by Titles 1 through 10 of this article. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the title on secured transactions (Title 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

MD.CODE ANN., Commercial § 2–401(2). While § 2–401(2) includes the phrase "[u]nless otherwise explicitly agreed," the limits contained in § 2–401(1) regarding the parties' contractual freedom still come into play. *See Bosson*, 432 F.Supp. at 1020 n. 24.

■ As noted before, none of the documents signed by the debtor and College Park explicitly mention title. Clearly, College Park's performance as to the physical delivery of the car was completed. The debtor received the car from College Park on December 13, 1997, and she had possession of the car until February 5, 1998, when College Park repossessed the car. Therefore, the debtor had title to the car and College Park only retained a security interest in the car.

■ College Park points to a provision in the Spot Delivery/Financing document that the debtor "desires to accept delivery and possession of the vehicle pending approval by a financing source" and argues that the transaction was a mere temporary transfer of possession, with a completed transaction contingent on the debtor's obtaining financing. But the Spot Delivery/Financing document clarified what the contingency was: it stated that if College Park did not receive approval from a lending source on terms acceptable to College Park, "upon notice from [College Park], Purchaser shall return the vehicle . . . and the sales transaction may be rescinded." So at best the document supports an argument that at College Park's option, title would revert to College Park if the debtor did not obtain financing.[4] The contingent nature of the transaction cannot negate the applicability of §§ 2–401 and 2–402. College Park was acting as a seller. Once College Park delivered the car to the debtor, any right to rescind the transaction was ineffective to prevent the passing of title. The transaction was not rescinded prior to the filing of the petition and thus the debtor remained the car's owner.

■ The location of title is irrelevant to determining rights under title 9 of the Md. Code Ann., Commercial. "Each provision of this title with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." MD.CODE ANN., Commercial, § 9–202. Thus, College Park could have a security interest against the debtor's legal and equitable ownership of the car despite failing to retain legal title (as might have been necessary if under prior law Maryland employed a "title theory" rather than a "lien theory" of secured transactions). The critical issue narrows to that of perfection of the security interest.

■ As to questions regarding perfection of the security interest, Maryland law provides:

If the parties to a transaction creating a purchase money security interest in goods in one jurisdiction understand at the time that the security interest attaches that the goods will be kept in another jurisdiction, then the law of the other jurisdiction governs the perfection and the effect of perfection or nonperfection of the security interest. . . .

MD.CODE ANN., Commercial § 9–103(1)(c). The debtor lived in the District of Columbia at the time of the transaction. College Park knew of the debtor's residence, so it was aware that the car would be kept in the District of Columbia. Therefore, the law of the District of Columbia applies to the issue of perfection of the security interest, and College Park's arguments based on MD. CODE ANN., Transportation §§ 13–201 and 13–202 are irrelevant.

■ The UCC's filing requirements do not apply to security interests that are subject to D.C.Code § 40–1001 *et seq.* D.C.CODE § 28:9–302(3)(b). Instead, District of Columbia law provides that a security interest in a car is perfected by entering a lien on the certificate title:

4. College Park also points to the documents executed postpetition on January 2, 1998, as superceding the documents executed on December 24, 1997. These documents did not change the ownership of the car, but only re-wrote the prior sale on new terms. Moreover, the trustee's own-

ership rights on the petition date could not be undone by documents that the debtor executed postpetition. Any attempted transfer of ownership by the debtor postpetition would have been void (or at least voidable) because of 11 U.S.C. §§ 362(a) and 549(a).

During the time a certificate is outstanding for any motor vehicle ... no lien against such motor vehicle ... shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth; .... The filing provisions of Article 9 of Subtitle I of Title 28 of the District of Columbia Code do not apply to liens recorded as herein provided, and a lien has no greater validity or effect during the time a certificate is outstanding for the motor vehicle ... covered thereby by reason of the fact that the lien has been filed in accordance with that article.

D.C.CODE § 40–1002. However, this statute (and D.C.Code § 40–1001 *et seq.*) cannot apply here, as no certificate of title was issued for the car.

■ With no certificate of title having been issued and D.C.Code § 40–1001 *et seq.* therefore inapplicable, the UCC presumably provides for the proper method of perfecting a security interest. College Park must carry the burden of showing that it has perfected its security interest in accordance with applicable state law, which the court assumes would require College Park to perfect its security interest by filing a financing statement. But College Park has failed to satisfy its burden of proof; it has not presented any evidence that it has filed a financing statement. College Park is thus an unperfected secured party.

■ The rights of an unperfected secured party are subordinate to the rights of one who becomes a lien creditor before the perfection of the security interest. D.C.CODE § 28:9–301(1)(b). Therefore, as the holder of the rights of a hypothetical judgment lien creditor under 11 U.S.C. § 544(a)(1),[5] the plaintiff holds rights in the car superior to College Park's rights. The plaintiff is entitled under § 542(a) to use his turnover remedy.

## III

The court will grant partial summary judgment as to Count II.

The repossession occurred postpetition and after the debtor says she notified College Park of the bankruptcy filing. College Park has presented an affidavit of its General Counsel, Jerry H. Griffin, stating that he was unaware of the bankruptcy filing and unaware of anyone at College Park who was informed of the filing. However, such statements regarding lack of knowledge by College Park's General Counsel are plainly irrelevant: just because he is unaware of anyone's knowledge of the filing does not mean that College Park as an entity lacked knowledge of the filing. Even if he had canvassed all of College Park's offices and employees who were in a position to have been recipients of any notice, his report of the results of his inquiries would be hearsay. Griffin's affidavit thus fails to raise a genuine issue regarding the debtor's affidavit.[6]

However, the debtor's affidavit is conclusory on this issue. It does not state how the debtor gave notice and to whom. Whether her acts actually constituted notice is a determination the court, not the debtor, must make.

■ Even if College Park was not advised by the debtor of the filing, it certainly knows by now. On February 23, 1998, the

---

**5.** 11 U.S.C. § 544(a)(1) provides:

"(a) The trustee shall have, as of the commencement of the case, ... the rights and powers of ...—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]"

**6.** The defendant contends that "the first notice of the bankruptcy was the Trustee's letter request-

ing that the vehicle be turned over to the bankruptcy estate." Defendant's Response to Motion for Summary Judgment Filed by the Trustee, Responses to Statement of Undisputed Material Facts, Defendant's Statement of Material Facts Which Are Not Subject to Dispute, para. 2. But absent an affidavit that rebuts the debtor's affidavit, no genuine dispute has been raised regarding any facts established by the debtor's affidavit.

Also irrelevant is the debtor's failure to list College Park as a creditor in her schedules and her mailing matrix. Instead, the relevant fact is that notice was given to College Park.

plaintiff faxed to College Park a letter maintaining that College Park's repossession of the car violated the automatic stay. College Park—now fully aware of the bankruptcy filing—has not acquiesced to the plaintiff's demands. Therefore, College Park willfully violated the automatic stay. Accordingly, the court will grant partial summary judgment to allow the trustee to recover any damages suffered on or after February 23, 1998.[7]

## IV

 The plaintiff is entitled to the amount for which he could have sold the car had College Park not seized the car in violation of the automatic stay. Additionally, the trustee is entitled to his attorney's fees incurred by reason of the violation of the automatic stay.

For various reasons, however, the proper amount of damages cannot be adjudicated on the record presently before the court. First, as to attorney's fees, the defendant has not been given a set time to respond to the trustee's documentation regarding fees incurred.[8] Second, the court lacks information regarding exactly in what amount the plaintiff has otherwise been damaged. The plaintiff requests, in part, a monetary judgment of $14,110.00, which was the sale price (excluding sales taxes) of the new car to the debtor. It is dubious that the car—no longer a new car—would have yielded its full original retail sales price had the trustee not been prevented from selling the car.

An order follows.

---

7. It is unclear whether any damages were incurred by the trustee prior to February 23, 1998, as he has not articulated whether he was ready to sell the car at an earlier date.

8. The documentation was filed by way of the trustee's reply to the defendant's opposition to his motion for summary judgment.